## IN THE UNITED STATES DISCTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMANI ADAMS, individually and on behalf of all others similarly situated, | Civ. Action No.   1:15-cv-495 (GTS/RFT) |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| REVIVA LABS, INC., | |
| Defendant. | |

Plaintiff Kimani Adams ("Ms. Adams" or "Plaintiff"), on behalf of herself and all others similarly situated, hereby alleges against Defendant Reviva Labs, Inc., ("Reviva" or "Defendant") the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief including the investigation of her counsel.

### NATURE OF ACTION

1.      This is a class action against Reviva Labs, Inc., arising out of the marketing and sale of its "Stem Cell Booster Serum with Swiss Apple Stem Cells" a/k/a "Stem Cell Booster Serum #310" ("Stem Cell Booster Serum" or the "Product").

2.      Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Reviva markets the Stem Cell Booster Serum as a revolutionary and "almost magical" anti-aging extract that can purportedly "help revive skins [*sic*] own dormant stem cells and can help bring new life and energy to the epidermis."   Reviva claims that the Stem Cell Booster Serum contains stem cells from the "extremely rare Uttwiler Spatlauber Apple" that "actually repair a human's aged or damaged stem cells" and "rejuvenates or reactivates stem cells in your skin."

3.      Reviva's representations, however, are false and misleading.   The Stem Cell

1

Booster Serum has no effect on the skin's epidermis cells and the apple stem cells in the product cannot provide any anti-aging benefits.

4.      Plant stem cells, such as the apple stem cells touted by the Defendant, even when alive, do not have any remedial effects on human stem cells when topically applied to the skin. Moreover, the apple stem cell extracts found in cosmetics, such as the Stem Cell Booster Serum, do not survive in their active form and, therefore, cannot provide therapeutic anti-aging effects. Thus, Reviva's "stem cell" claims are patently false and Defendant's claims of increased cellular longevity and skin cell reparation are misleading to consumers.

5.      Additionally, the Stem Cell Booster Serum is also misleading because the Defendant misbranded it under the Food Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et. seq.*, and its implementing regulations.  Under the FDCA, the Stem Cell Booster Serum is a drug because the product claims to affect the structure or function of the human body. Reviva violated numerous provisions of the FDCA by failing to obtain approval of this "new drug" or even to adequately disclose the proportions of the active ingredients. Reviva's lack of disclosure is further misleading to consumers and if consumers were aware that the Stem Cell Booster Serum was misbranded, they would not have purchased the Product.

6.      Reviva's hoax involves numerous false and misleading statements concerning its Stem Cell Booster Serum that have injured Plaintiff and the Class by inducing them to purchase a worthless and/or overpriced product.  Reviva does so with one goal in mind - to reap enormous profits at the expense of unsuspecting consumers.  Reviva, however, should be held accountable and liable for its deceptive conduct in its marketing and sale of the Stem Cell Booster Serum.

7.      Plaintiff seeks relief in this action individually, and as a class action on behalf of all persons in the United States who, within the relevant statute of limitations period, purchased

the Stem Cell Booster Serum, for Defendant's violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, breach of express warranties, breach of implied warranties of merchantability, for unjust enrichment, and for violations of New York's General Business Law ("GBL)" §§ 349, 350 *et seq.*

### THE PARTIES

8.      Plaintiff Kimani Adams is a resident of Connecticut. Plaintiff Adams purchased Reviva's Stem Cell Booster Serum on several occasions from GNC and Vitamin World stores in or near Albany, New York.  Plaintiff began purchasing the product in or around Summer of 2011 and continued to purchase the product until in or around Summer of 2013.   Plaintiff paid approximately $25.00 for each purchase of the product.  Adams purchased the Stem Cell Booster Serum in reliance on Defendant's misrepresentations, including those found on the Product label and/or in various advertisements and promotional materials as described herein.  Plaintiff Adams paid a significant premium because of the false and misleading claims she relied upon. Ultimately, the Stem Cell Booster Serum was worthless (and certainly worth less than its representations suggested), and Plaintiff Adams would not have purchased the Stem Cell Booster Serum had she known that the claims on the label were false, misleading, and misbranded.[1]

9.      Defendant Reviva Labs, Inc. is a New Jersey corporation with its principal place of business located at 705 Hopkins Road, Haddonfield, New Jersey 08033.   Defendant manufactures, markets, and sells a variety of skin care products, including the Stem Cell Booster Serum, throughout the United States.   In its brochure for the Stem Cell Booster Serum, Defendant claims that "[f]or nearly 40 years Reviva Labs has been making new skin care

---

[1] Plaintiff would still be interested in purchasing the product in the future if it were advertised properly and/or truthfully.

breakthrough affordable."[2]    Defendant further claims that its founder, Stephen Strassler, "introduced the first exfoliant to America's health food stores and emerging skin-salon market." [3] Since then, Defendant touts that it "has continued to pioneer many other skin care breakthroughs such as 100% freeze-dried Collagen Fibre, Elastin, topical trace minerals, Vitamin P for spider veins and rosacea, Essential Fatty Acids for thin skin and more."  Defendant claims that the Stem Cell Booster Serum is "another exciting first."[4]

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action where Plaintiff and Class Members are from a different state than Defendant.  Further, at least two thirds of the members of the class are citizens of a state different from Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff Adams is a resident of the state of Connecticut, Defendant is a resident of the state of New Jersey, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

12.    In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff is alleging Defendant has violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*

13.    Personal jurisdiction is derived from the fact that Defendant systematically and

---

[2] Defendant's brochure is available at https://www.revivalabs.com/images/white_papers/Reviva _Labs_Swiss-Apple-Stem-Cell-Serum_brochure.pdf.
[3] *Id.*
[4] *Id.*

continuously conducts business within the state of New York and the events giving rise to Plaintiff's claims occurred in the state of New York and within this judicial district.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events and acts giving rise to the claims herein occurred in this District as Plaintiff purchased the Stem Cell Booster Serum on multiple occasions from stores located within this District.

## FACTS

### A.     The Anti-Aging Products Marketplace

15.     The anti-aging skincare market in the United States has consistently exceeded $2 billion dollars in recent years.[5]  Recent market research has found that American women lead the way in anti-aging facial skincare usage when compared to their counterparts in Germany, France and the United Kingdom.[6] The United States, the United Kingdom and France launched the most anti-aging skincare products between 2009 and 2011, as compared to eastern countries, such as Japan and China.[7]  37% of U.S. women have used anti-aging creams and serums, compared to 23% of women in the U.K. women, 24% women in France, 25% of women in Germany, and 26% of women in Spain.[8]

16.     The anti-aging market for products beyond just skincare is far bigger and also growing at a rapid rate.  "The market research firm, Global Industry Analysts, projects that a baby-boomer-fueled consumer base, 'seeking to keep the dreaded signs of aging at bay,' will push the U.S. market for anti-aging products from about $80 billion now to more than $114

---

[5] http://www.statista.com/statistics/312336/us-anti-aging-skin-care-sales/.
[6] *See American Women Most Likely to Use Anti-Aging Face Creams, the West Leads in NPD*, Mintel (Jun. 15, 2012), *available at* http://www.mintel.com/press-centre/press-releases/884/american-women-most-likely-to-use-anti-aging-face-creams-the-west-leads-in-npd.
[7] *Id.*
[8] *Id.*

billion by 2015."[9]

17.    Anti-aging skincare is one of the industry's booming sectors.  Wrinkle creams and facial serums are top-sellers.  The market for cosmetics with medicine-based ingredients – or "cosmeceuticals" - is estimated to be approaching $20 billion.[10]

18.    There are two types of aging in the skin: (1) intrinsic or chronologic aging, and (2) extrinsic or environmental aging.  In intrinsic aging, free radicals are formed naturally through normal metabolism.  With intrinsic aging, over time, cellular mechanisms become less efficient resulting in fine wrinkles and a relaxed appearance.  In extrinsic aging, the skin suffers additional free radical damage from exogenous factors such as UV exposure, cigarette smoking and air pollution.  These environmental stressors not only accelerate skin aging, but are distinctly responsible for skin damage not present in chronological aging alone, leading to deep wrinkles, hyper-pigmentation, chronic inflammation, abnormal elastin formation, and cancer.[11]

19.    Consumer Reports recently tested a number of anti-aging skincare products and their tests showed "inflated claims and limited results."  Consumer Reports tested nine anti-aging face serums, all available at drug stores for prices ranging from $20 to $65 and all claiming to reduce wrinkles.  According to Consumer Reports, "After six weeks of use, the effectiveness of even the best products was limited and varied from subject to subject."[12]  When the tests did

---

[9] *See*, David Crary, *Boomers Will Be Pumping Billions Into Anti-Aging Industry*, Huffington Post (Aug. 8, 2011), http://www.huffingtonpost.com/2011/08/20/boomers-anti-aging-industry_n_932109.html.

[10] *Id.*

[11] *See* R.M. Lavker, *Cutaneous aging: Chronologic versus photoaging*, 1 In B. Gilchrest (Ed.) Photodamage, 123-135 (1995); *see also* S. Bosset et al., *Photoageing shows histological features of chronic skin inflammation without clinical and molecular abnormalities*, 149 Brit J Derm. 826-835 (2003).

[12] *See Anti-wrinkle face serums*, CONSUMER REPORTS MAGAZINE: May 2010 (May 2010), *available at* http://www.consumerreports.org/cro/magazine-archive/2010/may/health/wrinkle-ser um/overview/wrinkle-serum-ov.htm?loginMethod=auto >.

show wrinkle reductions, "they were at best slight, and they fell short of the miracles that manufacturers seemed to imply on product labels."[13]  Consumer Reports also tested anti-aging wrinkle creams and also found that these products do not live up to their claims.  The magazine tested seven wrinkle-cream products and one control product, finding that "[a]t best the products had a small effect, and not on everyone."[14]

20.     The National Institute on Aging correctly advises that consumers should be skeptical and on guard for possible scams involving purported anti-aging products.  "Our culture places great value on staying young, but aging is normal.  Despite claims about pills or treatments that lead to endless youth, no treatments have been proven to slow or reverse the aging process."[15]

**B.     Defendant Capitalizes On The Booming Anti-Aging Products Market**

21.     To capitalize on this booming anti-aging product market and distinguish its products from the deluge of other skin care products available to consumers, Reviva has embarked on a massive misleading marketing campaign designed to convince consumers that its "almost magical" Stem Cell Booster Serum offers astounding, often immediate anti-aging results, (purportedly) backed by extensive scientific research and clinical testing.

22.     As a result, Reviva is able to induce consumers to pay premium prices for the Stem Cell Booster Serum.  The Product retails for approximately $25.00 to $30.00 per unit.

---

[13] *Id.*

[14] *See Wrinkle Cream Buying Guide*, Consumer Reports (Apr. 2012), http://www.consumer reports.org/health/healthy-living/beauty-personal-care/wrinkle-products/wrinkle-creams/index .htm.

[15] *See Beware of Health Scams*, National Institute on Aging (Sept. 2008), http://www.nia.nih. gov/health/publication/beware-health-scams.

Reviva's brochure advertises the Product at "$30.00 for a one-ounce bottle."[16]

23.     The Defendant sells the product for $30.00, plus shipping, on its own website, www.revivalabs.com.[17] Reviva's Stem Cell Booster Serum can also be purchased by consumers through boutique retailers, drugstores such as GNC, specialty health and beauty salons, and major online retailers such as Amazon.com.

## C.     Defendant's False And Misleading Marketing Of The Stem Cell Booster Serum

24.     Defendant has engaged in a uniform marketing and advertising campaign designed to convince consumers that the Stem Cell Booster Serum  is scientifically proven to provide consumers with "dramatic anti-aging" results.

25.     These false and misleading statements were disseminated in advertising, marketing, and promotional materials designed to induce consumers to purchase the Stem Cell Booster Serum through the internet, sales representatives, and at various stores.

26.     Indeed, on Reviva's website, it makes numerous anti-aging claims, purportedly backed by exhaustive scientific research, including claims that Stem Cell Booster Serum "rejuvenates or reactivates stem cells in your skin."[18]  For example, on the website for the Stem Cell Booster Serum, Reviva represents that:

> During research, a 2% extract of Swiss Apple Malus Domesitica was applied twice daily for 28 days. The results were impressive - wrinkles showed significant visible decreases in 100% of the test subjects! The Swiss Apple's extract revitalizes stem cells - recharging the cell - turning it into an anti-aging acting powerhouse.[19]

---

[16] https://www.revivalabs.com/images/white_papers/Reviva_Labs_Swiss-Apple-Stem-Cell-Serum_brochure.pdf.

[17] https://www.revivalabs.com/store/products/NEW-Items-pl.html.

[18] https://www.revivalabs.com/info/articles/Swiss-Apple-Stem-Cell-Booster-Serum-ad.html.

[19] *Id*.

27.     Furthermore, Defendant claims on its website that "An Apple-a-Day Can Keep Aging Away" and that use of the Product will "Reactivate your body's fountain of youth - the stem cells." Defendant further falsely touts the Product as being supported by scientific research by making statements, such as:

- "Stem cell research has had many incredible breakthroughs in recent years. One of the biggest related to anti-aging skin care is the Uttwiler Spatlauber Apple. This extremely rare Swiss Apple possesses an almost magical extract that rejuvenates or reactivates stem cells in your skin. By boosting the activity of your skin's own stem cells, aging dull skin can be restored to healthy, younger-looking skin."

- "The Swiss Apple stem cell extract has it's [*sic*]origins in Switzerland where scientists have extracted stem cells from the rare Uttwiler Spatlauber Swiss Apple which stimulates the skin's epidermal cells, bringing 'new life' and energy to the epidermis to promote healthier new skin cells."



28.     Defendant makes similar representations on the Product's packaging about the purported benefits of apple stem cells, claiming they are "one of the most important skin-care discoveries in years" and are scientifically backed by "Swiss research." Defendant makes the following false and misleading statements on the Product's packaging:

- "Swiss apple stem cells help revive skins [*sic*] own dormant stem cells and can help bring new life and energy to the epidermis.   Recharging epidermal cells with our stem cell serum makes skin more responsive to the day or night cream applied over our serum.   Overall results are accelerated and remarkably improved."

- "Swiss research showed a major decrease in appearance of lines and wrinkles in 30 days. The study with volunteers aged 37 to 64 determined significant decrease in crows [sic]feet wrinkle depth for 100% of participants."

- **"Our advanced formulation also features select organic botanicals that provide additional texturing and anti-aging benefits"** (emphasis in original)

- "All skin types can improve from the properties of the Swiss apple stem cells. **But mature skin, whose cells have been most affected by normal aging, sun and pollution damage will benefit most.**" (emphasis in original)

- "Helps fight the signs of aging!"

- "Dramatic anti-aging with Rare Swiss Apple Stem Cells."



**Front Label of the Stem Cell Booster Serum**

## One of the most important skin-care discoveries in years.

### Dramatic anti-aging with Rare Swiss Apple Stem Cells.

Swiss scientists have determined that the stem cell extract (Malus Domestica) from the rare Uttwiler Spatlauber Swiss apple can stimulate skins epidermal cells. In fact, some scientists regard it as one of the most important skin care discoveries in years!

**Special Benefits:**

**1)** Swiss apple stem cells help revive skins own dormant stem cells and can help bring new life and energy to the epidermis. Recharging epidermal cells with our stem cell serum makes skin more responsive to the day or night cream applied over our serum. Overall results are accelerated and remarkably improved.

**2)** Swiss research showed a major decrease in appearance of lines and wrinkles in 30 days. The study with volunteers aged 37 to 64 determined a significant decrease in crows feet wrinkle depth for 100% of the participants.

*Our advanced formulation also features select organic botanicals that provide additional texturizing and anti-aging benefits.*

All skin types can improve from the properties of the Swiss apple stem cells. **But mature skin, whose cells have been most affected by normal aging, sun and pollution damage, will benefit most.**



Haddonfield, NJ 08033
**www.revivalabs.com**

**#310**

**Back Label of the Stem Cell Booster Serum**

29.   Defendant also published a brochure for the Stem Cell Booster Serum where it further makes false and misleading claims about the Product's anti-aging benefits.[20]



**Front Cover of the Stem Cell Booster Serum Brochure**

30.   Defendant's brochure makes the following false claims about how apple stem cells can actually interact with human cells:

> "Stem Cells are born in the bottom 'basal' layer of the epidermis. Skin scientists claim they are programmed by genes for a specific number of replications (self renewals).
>
> Regeneration is affected by sun damage, smoking, injury, etc., but mostly by chronological aging.

---

[20] Defendant's brochure is available at https://www.revivalabs.com/images/white_papers/Reviva _Labs_Swiss-Apple-Stem-Cell-Serum_brochure.pdf.

With wear and tear and general aging, skin's stem cells gradually lose energy, become weaker and less efficient in creating healthy new skin. That's when signs of aging start to appear.

However, Swiss scientists have discovered that stem cells from a rare Swiss Apple can actually repair a human's aged or damaged stem cells, giving new life and a younger look and feel to skin.

What's more, they can even extend the longevity of normal, healthy cells and 'help keep wrinkles at bay'.

 In other words, the Swiss Apple extract helps human cells act younger and live longer. The result is improved skin texture, reduced wrinkle depth, and ultimately, better looking skin."



**About Skin Stem Cells**

Stem Cells are born in the bottom "basal" layer of the epidermis. Skin scientists claim they are programmed by genes for a specific number of replications (self renewals).

Regeneration is affected by sun damage, smoking, injury, etc., but mostly by chronological aging.

With wear and tear and general aging, skin's stem cells gradually lose energy, become weaker and less efficient in creating healthy new skin. That's when signs of aging start to appear.

However, Swiss scientists have discovered that stem cells from a rare Swiss Apple can actually repair a human's aged or damaged stem cells, giving new life and a younger look and feel to skin.

What's more, they can even extend the longevity of normal, healthy cells and "help keep wrinkles at bay".

In other words, the Swiss Apple extract helps human cells act younger and live longer. The result is improved skin texture, reduced wrinkle depth, and ultimately, better looking skin.

**Stem Cell Activity**

*A stem cell will lose "energy" over time, but Reviva's Stem Cell Booster Serum helps prevent loss of energy and actually increases cell energy over time.*

**Inside of the Stem Cell Booster Serum Brochure**

31.     Defendant's comprehensive marketing campaign misleads unsuspecting consumers into believing that the purported apple stem cells in the Stem Cell Booster Serum can help fight the signs of aging when, in fact, apple stem cells can provide no such benefit.

**D.      Apple Stem Cells Cannot Reduce Or Prevent Signs Of Aging**

32.     Each of Reviva's anti-aging claims is false and misleading.  As noted by S. Jay Olshansky, a distinguished professor at the University of Illinois-Chicago's School of Public Health who has written extensively about aging, "If someone is promising you today that you can slow, stop or reverse aging, they're likely trying hard to separate you from your money."[21]

33.     The idea behind stem cell therapy is that living stem cells can help rebuild and repair human organs.  Stem cells are living undifferentiated biological cells that can become specialized cells in human organs and, in turn, divide and produce more healthy specialized cells.  Like human stem cells, living plant stem cells have the ability to self-renew and replace specific cells in plants that are in need of repair.  However, living plant stem cells are not found in beauty products and even if they were, they would not have the capability to differentiate into specialized human skin cells.

34.     Paolo U. Giacomoni,  a former executive director of research at Estee Lauder, who received a Laurea in Atomic Physics from the University of Milan and a Ph.D. in Biochemistry from the University of Paris, is critical of the role of stem cells in cosmetics. "Stem cell technology is still far from biomedical applications, let alone cosmetic ones," states

---

[21] *See* David Crary, *Boomers Will Be Pumping Billions Into Anti-Aging Industry*, HUFFINGTON POST (August 8, 2011), *available at* http://www.huffingtonpost.com/2011/08/20/boomers-anti-aging-industry_n_932109.html.

Giacomoni.[22]

35.     The Stem Cell Booster Serum does not actually contain any living apple stem cells among its ingredients.  Rather, the Product contains an ingredient referred to as "Malus Domestica Cell Culture Extract" and consisting of deceased apple stem cells.

36.     Stem cell culture is a delicate process requiring temperature-controlled incubators and a constant supply of growth factors presented to the cells in specially-formulated sterile media.  Stem cells die quickly after removal from such sterile conditions.  After cell death, the cells are quickly broken down by enzymatic, chemical and bacterial means.  To assert that any cosmetic product could contain anything resembling a "stem cell" after undergoing the manufacturing process, which adds dozens of additional herbal and chemical components, is a patently absurd falsehood that seeks to prey on the average consumer's ignorance of cell biology.

37.     Moreover, even living plant stem cell extracts are unable to reverse the signs of aging as Defendant claims.  Rather, plant stem cell extracts likely  do not interact with human stem cells at all.  Jörg Gerlach, M.D., Ph.D., Professor of Surgery at the University of Pittsburgh, stated "[s]tem cells need specific nutrition via blood supply in the tissue to survive and function — if they were layered onto intact skin the stem cell would just die."[23]  His conclusion has been echoed by other leading experts in the fields of medicine and biology.  For example, a leading Professor of Botany at Oxford University was quoted by *The Daily Mail* as saying, "I don't see

---

[22] Andrea Rinaldi, *Healing beauty? More biotechnology cosmetic products that claim drug –like properties reach the market,* EMBO REPORTS (Nov. 2008) *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2581859/.

[23] *See* Brooke Borel, *Stem Cell Skincare: Fact or Fiction? A growing list of beauty creams boast they can reverse wrinkles and defy age with the help of stem cells, but none have the science to back up the claims*, YOU BEAUTY, Oct. 17, 2011, *available at* http://www.youbeauty.com/skin/stem-cells-skincare.

how plant stem could interact with human stem cells in this way."[24]  Even some leading proponents of plant stem cells admit that the "anti-aging benefits to the skin after topical application of plant stem cells could not be confirmed in a clinical trial."[25]

38.    Likewise, Dr. Waleed Ezzat, MD, a facial reconstructive surgeon at the Boston Medical Center was quoted by *Boston Magazine* saying, "The bottom line is that there is no conclusive scientific data that absorbing stem cell extracts from a cream can really reverse the aging process. My advice is that a good cream is a good cream. But if the advertising seems to [*sic*] good to be true, it most likely is.  Buyer beware."[26]

39.    Even if apple stem cells did interact with human stem cells, the apple stem cells would not be able to pass through the outer layers of the skin to reach the skin stem cells that are found in the inner-most basal layer of the skin.[27]

40.    Reviva misleads consumers by explicitly and implicitly representing that apple stem cells in the Stem Cell Booster Serum can help prevent the signs of aging.  However, apple stem cells cannot reverse or prevent the signs of aging as Defendant suggests because it is scientifically impossible for apple stem cells found in the Product to interact with human skin cells in a way that could reduce the effects of aging.  If reasonable consumers would have known the truth about the efficacy of stem cells in the Product, they would not have purchased the

---

[24] *See* Leah Hardy, *Could the extract form a rare swiss apple REALLY get rid of your wrinkles?*, DAILY MAIL, Nov. 30, 2009, *available at* http://www.dailymail.co.uk/femail/article-1231889/Could-extract-rare-Swiss-apple-REALLY-rid-wrinkles.html.

[25] *Id.*

[26] *Ask a Doctor: Do Stem Cell Face Creams Really Work? A facial plastic surgeon tells us the truth behind the stem cell face cream marketing hype*, BOSTON MAGAZINE, Jan. 8, 2013, *available at* http://www.bostonmagazine.com/health/blog/2013/01/08/stem-cell-face-creams/.

[27] *Skin stem cells: where do they live and what can they do?*, EUROSTEMCELL (Feb. 9, 2011), *available at* http://www.eurostemcell.org/factsheet/skin-stem-cells-where-do-they-live-and-what-can-they-do

Product.

**E.**     **The Stem Cell Booster Serum Is Misbranded**

**1.**     **The Federal Food, Drug, and Cosmetic Act ("FDCA")**

41.     The FDCA, 21 U.S.C. § 301 *et seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide.  In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.[28]

42.     The FDCA defines the term "drug" in part, by the article's intended use as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals . . ." or ". . .articles (other than food) intended to affect the structure or function of the body of man or other animals . . . ." 21 U.S.C. § 321(g)(1).

43.     The FDCA defines the term "cosmetic" by the item's intended use as "articles

---

[28] *See* 21 C.F.R. § 201.128.

> The words *intended uses* or words of similar import . . . refer to the objective intent of the persons legally responsible for the labeling of drugs. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. . . . But if a manufacturer knows, or has knowledge of facts that would give him notice, that a drug introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a drug which accords with such other uses to which the article is to be put.)

intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

44.     The terms "cosmetic" and "drug" are not mutually exclusive under the FDCA. The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and also "is a drug because its intended use is to treat dandruff. . . . Such products must comply with the requirements for both cosmetics and drugs."[29]

45.     The FDA has further explained "[f]irms sometimes violate the law by marketing a cosmetic with a drug claim or by marketing a drug as if it were a cosmetic, without adhering to requirements for drugs."[30]

### 2.      The Stem Cell Booster Serum Is Both a Cosmetic and a Drug

46.     Reviva markets the Stem Cell Booster Serum as a cosmetic.  But the Stem Cell Booster Serum is also a drug because an intended use of the product, as repeatedly demonstrated throughout Reviva's packaging, advertising, and marketing materials, is to affect the structure and function of the human body - specifically, the human skin, wrinkles found on the human skin, and human epidermal cells.  Accordingly, the Product is promoted for uses that make it a "drug" under 21 U.S.C. § 321(g)(1), including through statements similar to those the FDA has found render other, similar products to be considered drugs under the Act.[31]

---

[29] *Id.*

[30] *Id.*

[31] *See*, *e.g.*, Warning Letter from FDA to StriVectin Corporate Headquarters (Feb. 12, 2015), *available   at*   http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm436692.htm

47.     Specifically, the following Reviva representations expressly set forth therapeutic uses or purposes for the Stem Cell Booster Serum, rendering it a drug under the FDCA:

- "Swiss apple stem cells help revive skins [sic] own dormant stem cells and can help bring new life and energy to the epidermis.   Recharging epidermal cells with our stem cell serum makes skin more responsive to the day or night cream applied over our serum.   Overall results are accelerated and remarkably improved."

- "The Swiss Apple's extract revitalizes stem cells – recharging the cell – turning it into an anti-aging acting powerhouse."

- "Swiss research showed a major decrease in appearance of lines and wrinkles in 30 days. The study with volunteers aged 37 to 64 determined significant decrease in crows [sic] feet wrinkle depth for 100% of participants."

- "Swiss scientists have discovered that stem cells from a rare Swiss Apple can actually repair a human's aged or damaged stem cells . . ."

- "A stem cell will lose 'energy' over time, but Reviva's Stem Cell Booster Serum helps prevent loss of energy and actually increases cell energy over time."

- **"Our advanced formulation also features select organic botanicals that provide additional texturing and anti-aging benefits"** (emphasis in original)

- "All skin types can improve from the properties of the Swiss apple stem cells. **But mature skin, whose cells have been most affected by normal aging, sun and pollution damage will benefit most.**" (emphasis in original)

- "Helps fight the signs of aging!"

- "Dramatic anti-aging with Rare Swiss Apple Stem Cells."

**3.      The Stem Cell Booster Serum Is Misbranded Because Its Label Violates FDCA Regulations For Over-the-Counter (OTC) Drugs**

48.     Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . .

_____

(finding product to be promoted as a drug in part based on representation that it was "proven to change the anatomy of a wrinkle.").

. . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

49.     Drug labeling regulations appear in Part 201 of Title 21 of the Code of Federal Regulations.

### (a)     The Stem Cell Booster Serum Does Not Contain Adequate Directions For Use

50.     Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . . . . [u]nless its labeling bears (1) adequate directions for use . . . ."

51.     21 C.F.R. § 201.5 sets forth the definition of "adequate directions for use" used in 21 U.S.C. § 352(f), and specific examples of inadequate directions. Because Defendant does not provide any adequate directions for use, it is misbranded pursuant to both 21 U.S.C. § 352(f) and 21 C.F.R. § 201.5.

### (b)     The Stem Cell Booster Serum Does Not Properly Label Active Ingredients

52.     The Stem Cell Booster Serum is misbranded because it does not state the active drug ingredients as required by 21 C.F.R. § 201.66(c), which provides in part:

> The outside container or wrapper of the retail package . . . shall contain . . . . (2) "Active ingredient" or "Active ingredients" "(in each [insert the dosage unit stated in the directions for use (e.g., table, 5 mL teaspoonful) or in each gram as stated in 333.110 and 333.120 of this chapter])", followed by the established name of each active ingredient and the quantity of each active ingredient per dosage unit. Unless otherwise provided in an applicable OTC drug monograph or approved drug application, products marketed without discreet dosage units (e.g., topicals) shall state the proportion (rather than the quantity) of each active ingredient.

53.     Specifically, the Product does not contain an adequate "Active Ingredients" statement. The "active ingredient" label on the Product reads as follows:

> "Purified Water, Glycerin, Organic Aloe Leaf Juice, Emulsifying Wax NF, Malus Domestica Apple Stem Cell Culture Extract, Xanthan Gum, Lecithin (Soy), Organic Flax Seed Oil, Organic Borage Oil, Organic Green Apple Extract,

Cyclopentasiloxane, Dimethiconol, Carbomer 940, Phenoxyethanol, Ethyl Hexyl Glycerin."

54.     Reviva's statement of active ingredients fails to provide the "established name of each active ingredient and the quantity of each active ingredient per dosage unit" as required by 21 C.F.R. § 201.66(c)(2).

55.     21 C.F.R. § 201.66(d) provides the "Format requirements" for the disclosures required under 21 C.F.R. § 201.66(c)(2). Because Defendant fails to even make those required disclosures under 21 C.F.R. § 201.66(c)(2), it also violates 21 C.F.R. § 201.66(d).

56.     Accordingly, the Stem Cell Booster Serum is misbranded pursuant to 21 U.S.C. § 352(c) and 21 C.F.R. § 201.66.

57.     Defendant's failure to disclose the proportion of active ingredients in the Stem Cell Booster Serum misleadingly obscures from consumers the amounts or proportions contained in the products, which could therefore be miniscule.

### 4.     The Stem Cell Booster Serum Is Misbranded Because Its Label Violates FDCA Regulations for Cosmetics

58.     Pursuant to 21 U.S.C. § 362(c), "[a] cosmetic shall be deemed to be misbranded . . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

59.     Cosmetic labeling regulations appear in Part 701 of Title 21 of the Code of Federal Regulations.

60.     Pursuant to 21 C.F.R. § 701.3(d), because the Stem Cell Booster Serum is a "cosmetic [that is] also an over-the-counter drug product," it must "declare the active drug ingredients as set forth in 201.66(c)(2) and (d) of" title 21 of the Code of Federal Regulations.

61.     As alleged above, the Stem Cell Booster Serum fails to make the statement of active ingredients required under 21 C.F.R. § 201.66. Accordingly, the product is misbranded

pursuant to 21 U.S.C. § 362(c) and 21 C.F.R. § 701.3.

### 5.   The Stem Cell Booster Serum Is an Unapproved New Drug

62.   Placing an unapproved new drug into the stream of commerce is an independent wrongful act under the FDCA, separate and distinct from misbranding. 21 U.S.C. § 355(a).

63.   Under the FDCA, drugs must either receive premarket approval by the FDA through a New Drug Application process, or conform to a monograph for a particular drug category, as established by the FDA's Over-the-Counter Drug Review. Such monographs specify conditions whereby OTC drug ingredients are generally recognized as safe and effective, and not misbranded.

64.   The FDA has not conducted a review of Stem Cell Booster Serum, and as such, the Product is not generally recognized as safe.  Nor has the FDA concluded that at least some of its active ingredients are generally recognized as safe or effective.

65.   Because the Stem Cell Booster Serum is not generally recognized as safe and effective when used as labeled, it is a  "new drug" as defined in 21 U.S.C. § 321(p).

66.   Such new drugs may not be lawfully marketed in the United States without prior approval from the FDA as described in 21 U.S.C. § 355(a), in the form of a New Drug Application approved.

67.   Defendant has not filed a "new drug" application for the Stem Cell Booster Serum, nor has the FDA ever approved any such application for the Product.

### F.   Reviva's False And Misleading Claims Are Material

68.   All of Defendant's false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the effectiveness of the Stem Cell Booster Serum, the qualities and/or composition of the Product

and the reason for which it is sold.

69.     Defendant's uniform apple stem cell anti-aging claims in its marketing and promotional materials are intended to, and did, induce Plaintiff and members of the Class defined herein to rely upon those representations that Defendant's Stem Cell Booster Serum was: (i) effective and scientifically tested and/or proven to regulate the activity and vitality of the epidermal stem cells and genes; (ii) repair aged or damaged stem cells;  (iii) promote skin cell survival and longevity; (iv) improve cellular metabolism, (v) provide consumers with anti-aging results, including reduced wrinkles; and (vi) effective for its intended use.  These representations were a substantial factor in causing Plaintiff and members of the Classes to purchase Defendant's Stem Cell Booster Serum.

70.     At the time members of the Classes purchased the Stem Cell Booster Serum, they were unaware of the fact that the Product was neither proven effective for its intended use, nor was it generally recognized among qualified experts as effective. Furthermore, members of the Classes were unaware that apple stem cell extracts found in cosmetics, such as the Stem Cell Booster Serum, cannot survive in active form long-term and therefore cannot provide therapeutic anti-aging effects, as claimed.

71.     If members of the Classes had been aware of the true facts concerning the efficacy of the Stem Cell Booster Serum, they would not have purchased the product.

72.     Plaintiff and members of the Classes have been injured in fact and have suffered out-of-pocket losses.  Plaintiff and members of the Class therefore seek a full refund and/or rescission of the transaction, and all further equitable and injunctive relief as provided by applicable law.

73.     Plaintiff also sustained legally cognizable injury in the form of lost money as a

result of Defendant's misbranding, which also was in the nature of an omission, *i.e.*, Defendant's failure to adequately disclose the Stem Cell Booster Serum's active drug ingredient proportions. Had Reviva labeled the Stem Cell Booster Serum in conformance with applicable FDCA and state law cosmetic and drug regulations, Plaintiff would not have purchased the Product at all.

74.     Plaintiff sustained legally cognizable injury in the form of lost money as a result of Reviva's marketing the Stem Cell Booster Serum in a manner that causes it to be a new drug within the meaning of the FDCA.  Because manufactures may not lawfully market or sell *any* new drug, the ineffective Stem Cell Booster Product would not have been available for sale to Plaintiff if Defendant had acted lawfully.

## CLASS ACTION ALLEGATIONS

75.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States who purchased, during the applicable statute of limitations period, one or more of the Reviva Stem Cell Booster Serum for personal, family, or household use, and not for resale ("the Class" or "the Nationwide Class").

76.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff further seeks to represent a subclass of all persons in New York who purchased, during the applicable statute of limitations period, one or more of the Reviva Stem Cell Booster Serum for personal, family, or household use, and not for resale ("the New York Sub-class").

77.     The members in the proposed Class and Subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class and Sub-Class Members in a single action will provide substantial benefits to the parties and Court.

78.     Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

a.      Whether the Product contains active apple stem cells;

b.      Whether the apple stem cell extracts in the Product directly interact with, stimulate, and/or otherwise affect the human skin;

c.      Whether the Stem Cell Booster Serum's packaging or labels violate applicable FDCA and state law regulations relating to drugs and cosmetics;

d.      Whether Defendant marketed and sold the Product as a new drugs, in violation of applicable FDCA and state law statutory and regulatory provisions;

e.      Whether Defendant's labeling, marketing and promotion of the Stem Cell Booster Serum is false and misleading;

f.      The proper equitable and injunctive relief;

g.      The proper amount of actual or compensatory damages;

h.      The proper amount of restitution or disgorgement;

i.      The proper amount of punitive damages; and

j.      The proper amount of reasonable litigation expenses and attorneys' fees.

79.    Plaintiff's claims are typical of Class Members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

80.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class Members, and has retained counsel competent and experienced in class action litigation.

81.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative

litigation, it would be infeasible for Class Members to redress the wrongs done to them.

82.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

83.     As a result of the foregoing, class treatment is appropriate under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

## COUNT I

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

### (By the Nationwide Class)

84.     Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows. Plaintiff brings this Count I individually and on behalf of the Members of the Nationwide Class, against Defendant.

85.     The Stem Cell Booster Serum is a consumer product as defined in 15 U.S.C. § 2301(1).

86.     The Stem Cell Booster Serum is sold at retail price for twenty-five dollars or more.

87.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301 (4) and (5).

88.     In connection with the sale of the Stem Cell Booster Serum, Defendant issued written warranties as defined in 15 U.S.C. § 2301 (6), which warranted that the Stem Cell Booster Serum contained apple stem cells that could reverse the signs of aging and the appearance of wrinkles.

89.     In connection with the sale of the Stem Cell Booster Serum, Defendant impliedly warranted as defined in 15 U.S.C. §2301(7), that the product was of merchantable quality, such

that the product was of the same average grade, quality, and value as similar goods sold under similar circumstances.

90.     Defendant breached these warranties because the Stem Cell Booster Serum is not effective for its intended use and apple stem cells have never been proven effective to reverse the signs of aging by competent and reliable scientific evidence.

91.     By reason of Defendant's breach of the express written warranties, Defendant violated the statutory rights owed to Plaintiff and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

92.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Booster Serum if the true facts had been known.

93.     Prior to filing this action, Plaintiff, by and through her counsel, provided Defendant with written notice of her claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendant that she is acting on behalf of a Class defined as all persons in the United States who purchased the Stem Cell Booster Serum.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (By the Nationwide Class)

94.     Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows.

95.     Plaintiff brings this Count II individually and on behalf of the members of the Nationwide Class against Defendant.

96.     Defendant, as amanufacturer, marketer, distributor, and/or seller, expressly warranted that the apple stem cells in the Stem Cell Booster Serum are effective at reducing the

signs of aging.

97.     In fact, the Stem Cell Booster Serum is not effective for its intended use and the apple stem cells that are purportedly contained in the Product have never been proven effective, by competent and reliable scientific evidence, to reduce the signs of aging.

98.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Booster Serum if the true facts had been known.

99.     Defendant breached its express warranty by selling a product that is not effective for its intended use and apple stem cells have never been proven effective by competent and reliable scientific evidence.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (By the Nationwide Class)

100.    Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows.

101.    Plaintiff brings this Count III individually and on behalf of the members of the Nationwide Class against Defendant.

102.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Stem Cell Booster Serum was fit for its intended purpose in that the stem cells in the Stem Cell Booster Serum would be effective at reducing the signs of aging. Defendant did so with the intent to induce Plaintiff and members of the Class to purchase the Product.

103.    Defendant breached its implied warranties in the contract for the sale of the Stem Cell Booster Serum because the apple stem cells in the Product are not effective at reversing the

signs of aging.

104.    In reliance upon Defendant's skill and judgment and the implied warranties discussed above, Plaintiff and the Class Members purchased the Stem Cell Booster Serum to help reverse the sings of aging.

105.    The Stem Cell Booster Serum was not altered by Plaintiff or the Class Members.

## COUNT IV
## UNJUST ENRICHMENT
### (By the Nationwide Class)

106.    Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows.

107.    Plaintiff brings this Count IV individually and on behalf of the Members of the Nationwide Class against Defendant.

108.    "The unjust enrichment claim can be made from common class wide proof." *Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 239 (C.D. Cal. 2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common scheme.). "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements - the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines,* 245 F.R.D. 226,231 (E.D. Pa. 2007).

109.    Plaintiff and the Class Members conferred a benefit on Defendant by purchasing

the Stem Cell Booster Serum.

110.    Defendant has been unjustly enriched by retaining the revenues derived from Class Members' purchases of the Stem Cell Booster Serum, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the facts concerning the efficacy of the Product and caused Plaintiff and the Class to lose money as a result thereof.

111.    Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Products if the true facts had been known. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

**COUNT V**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349,** *et seq.*

**(By the New York Sub-class)**

112.    Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows.

113.    Plaintiff brings this Count V individually and on behalf of the Members of the New York Sub-class against Defendant.

114.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices in the state of New York by making the misrepresentations described above.

115.    The foregoing acts and practices were directed at consumers.

116.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the efficacy of the Stem Cell Booster Serum to induce consumers to purchase the Product.

117.    Plaintiff and members of the Class were injured as a direct and proximate result of

Defendant's violation of N.Y. G.B.L. § 349 because they paid for the Product, which they would not have purchased had they known the true facts.

118.    Plaintiff and the New York Sub-Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT VI**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350, *et seq.***

**(By the New York Sub-class)**

119.    Plaintiff and the Class Members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein, and further allege as follows.

120.    Plaintiff brings this Count VI individually and on behalf of the Members of the New York Sub-class against Defendant.

121.    By the acts and conduct alleged herein, Defendant committed false advertising in the conduct of business, trade or commerce in the state of New York.

122.    New York G.B.L. § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."   The foregoing acts and practices were directed at consumers.

123.    The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the efficacy of the Stem Cell Booster Serum to induce consumers to purchase the product.

124.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's violation of G.B.L. § 350 because they paid for the Product, which they would not have purchased had they known the true facts.

32

125.    Plaintiff and the New York Sub-Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment and relief against Defendant as follows:

A.    An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of Class notice;

B.    An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

C.    An order awarding restitution of the purchase price of the Stem Cell Boosting Serum to Plaintiff and the proposed Class Members and restitutionary disgorgement of Defendant's revenues from all the Stem Cell Booster Serum made by Plaintiff and proposed Class members;

D.    An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Stem Cell Booster Serum, including a recall of the falsely labeled Products;

E.    An order awarding Plaintiff and the Class Members actual damages, punitive damages, and statutory damages as allowed under applicable laws in the amount to be determined at trial;

F.    An Order awarding costs, expenses, and reasonable attorneys' fees; and

G.    An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action so triable.

DATED: April 24, 2015                    Respectfully Submitted,


**FARUQI & FARUQI, LLP**


By: *s/ Antonio Vozzolo*
    Antonio Vozzolo (N.D.N.Y. 519247)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email: avozzolo@faruqilaw.com

**THE LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON (*pro hac* to be
filed)
651 Arroyo Drive
San Diego, California 92103
Telephone:      (619) 696-9006
Facsimile:      (619) 564-6665
Email:  ron@consumeradvocates.com

*Counsel for Plaintiffs and*
*the Proposed Class*